Harold Omar **MACK**,
Petitioner–Appellant,

v.

**UNITED STATES of America**,
Respondent–Appellee.

No. 80–1073.

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1980.
Decided Dec. 3, 1980.

Jan L. Nielsen, Yale University Law Student, with whom Dennis E. Curtis, New Haven, Conn., Renee D. Chotiner, Boston, Mass., Stephen Wizner, Alice Bussiere, New Haven, Conn., and Fredric Goldstein, Yale University Law Student, were on brief, for appellant.

Anna R. Tretter, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZANSKI, Senior District Judge.*

BOWNES, Circuit Judge.

Defendant-appellant Harold Omar Mack appeals the denial by the district court of a motion to vacate sentence, pursuant to 28 U.S.C. § 2255. The issues are whether the district court failed to comply with Fed.R. Crim.P. 11, and whether it erred in dismissing the motion to vacate sentence without ordering the United States Attorney to file an answer, pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings.

We reverse the decision of the district court and remand for a hearing at which the defendant shall be afforded the opportunity to plead anew.

## I.

Defendant was arrested on December 19, 1977, for transmitting an extortion demand via telephone in interstate commerce, in violation of 18 U.S.C. §§ 875(b) and 1952. A grand jury returned a four count indictment on February 22, 1978. Count I charged that Mack willfully and knowingly, and with the intent to extort money from S. Prestley Blake, threatened to injure the son of Blake, in violation of 18 U.S.C. §§ 875(b) and 2. Counts II and III charged that he, willfully and knowingly, and with intent to extort money from Blake, threatened to injure Blake's reputation in violation of 18 U.S.C. §§ 875(d) and 2. Count IV charged that Mack used and caused to be used telephone facilities in interstate commerce, and did cause S. Prestley Blake to travel in interstate commerce, with the intent to promote, manage, carry on and facilitate the promotion of an unlawful activity, that is, the extortion and attempted extortion of a sum of money, in violation of Mass.Gen. Laws ch. 265, § 25, 53a Conn.Gen.Stat. §§ 119 and 49, and 18 U.S.C. §§ 875(b) and (d), and that he thereafter did perform and attempt to perform those acts of unlawful activity in violation of 18 U.S.C. §§ 1952 and 2.

Prior to the indictment proceedings, the district court, pursuant to 18 U.S.C. § 4244, and upon the motion of the United States Attorney, committed Mack for sixty days to the Medical Center for Federal Prisoners in Springfield, Missouri, for a determination of his mental competency. During Mack's stay, the staff reported that on one occasion he engaged in behavior that was "agitated" and "assaultive," and concluded, therefore, that additional observation was necessary. At the request of the government, and with the assent of Mack's attorney, the district court, on March 8, 1978, extended its commitment order for thirty days.

A Report of Psychiatric Staff Examination, issued on March 24, 1978, concluded that Mack was competent to stand trial and that he was responsible at the time of his alleged offenses. He was released to the district court on April 7, 1978, after a 107–day stay at the Medical Center.

On June 26, 1978, Mack appeared before the District Court of Massachusetts at a change of plea hearing. When the court asked him if he wished to comment on the psychiatric report of the Medical Center, Mack responded:

* Of the District of Massachusetts, sitting by designation.

THE DEFENDANT: Yes. In Springfield, Missouri I was confronted with harassment from the medial staff. I was beaten. I was drugged. Ever since that particular incident, I haven't been functioning properly. And I would like to state that *I am being pressured into making the plea. I am not doing it of my own free will.*

They said if I go to trial and if I get convicted on all these counts, it carries a maximum of 20 years.

THE COURT: Just a minute. I am asking you whether you wish to comment at this time on the psychiatric and psychological examinations which I ordered on January 5, 1978. I am only asking whether or not you have seen the report, and whether you have any comments based upon it.

THE DEFENDANT: I haven't seen any report.

(emphasis added). After this exchange, but without further questioning from the court as to the claim that the plea was coerced, the defendant pleaded guilty to Count IV of the indictment. A plea bargain had been struck between defense counsel and the United States Attorney. In return for the plea, the government agreed to dismiss the other three remaining counts of the indictment and to recommend to the court a sentence of not more than five years imprisonment. On July 14, 1978, nineteen days after the change of plea hearing, the district court sentenced Mack to a five-year term of imprisonment and stated that he would be given credit for the time served awaiting trial.

A little more than a year later, on July 28, 1979, the appellant filed *pro se* in the district court a motion to vacate sentence, pursuant to 28 U.S.C. § 2255, alleging, *inter alia*, that while he was committed to the Medical Center, he "was beaten and forcefully given drugs continuously" and that "prison conditions in conjunction with inhumane treatment and the use of drugs coerced the Petitioner into pleading under very extreme circumstances, as is further stated by Petitioner in the record." The

district court, calling the motion "frivolous," denied it on December 28, 1979, without ordering the government to answer and without an evidentiary hearing. On March 7, 1980, Mack filed a motion for relief from judgment, pursuant to Fed.R.Civ.P. 60(b), requesting the district court to issue a memorandum of intent to grant relief from its order dismissing the motion to vacate sentence. The district court denied the motion and this appeal followed.

II.

The major contention of Mack is that the district court failed to comply with the mandate of Fed.R.Crim.P. 11 in accepting the guilty plea, because it did not insure that the plea was voluntary, did not inform him of the nature of the charge to which he pleaded, and did not determine that he understood the nature of the charge.

At the core of Fed.R.Crim.P. 11 is the policy that a court should not accept a guilty plea unless it determines that the plea is voluntary and the defendant understands the nature of the charges. Since its original enactment in 1944, the Rule has twice been amended, each time to afford defendants even greater protection from involuntary and ignorant pleas. In 1966, the Rule was expanded, requiring that the court address the defendant "personally," that it ascertain that "the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea," and that the court "not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1967), the Supreme Court sought to resolve any doubts about the effect of less than complete compliance with Rule 11 when it declared that "prejudice inheres in a failure to comply with Rule 11," *id.* at 471, 89 S.Ct. at 1173, that "any noncompliance with Rule 11 is reversible error," *id.* at 464 n.9, 89 S.Ct. at 1170 n.9, and that "a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew," *id.* at 472, 89 S.Ct. at 1174.

Effective December 1, 1975, Rule 11 was expanded once more. The provisions relevant to the instant case state:

(c) *Advice to Defendant.* Before accepting a plea of guilty . . ., the court must address the defendant personally in open court and inform him of, and determine that he understands the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; . . .

(d) *Insuring that the plea is voluntary.* The court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats of promises apart from a plea agreement.

■ There is a difference in the standard of review for alleged violations of Rule 11 on direct appeal and via section 2255 proceedings. On direct appeal, the standard of review is more advantageous to the defendant than on collateral appeal. *See United States v. Jacob John Gordon*, 634 F.2d 638 (1st Cir. 1980); *United States v. DiCarlo*, 575 F.2d 952, 954–55 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978); *Miller v. United States*, 564 F.2d 103, 105–06 (1st Cir. 1977), *cert. denied*, 435 U.S. 931, 98 S.Ct. 1504, 55 L.Ed.2d 528 (1978). The Supreme Court has distinguished between the standard of review of a collateral appeal of a Rule 11 violation and a direct appeal, holding that a guilty plea is not subject to collateral relief when all that is shown is a formal violation of Rule 11. *See United States v. Timmreck*, 441 U.S. 780, 785, 99 S.Ct. 2085, 2088, 60 L.Ed.2d 634 (1979). Since the requirements allegedly unsatisfied in the instant case are so obviously

central to the policy considerations underlying Rule 11, *Timmreck* does not apply.[1] Here, we follow the holding of *McCarthy* that "prejudice inheres in a failure to comply with Rule 11." *McCarthy v. United States*, 394 U.S. at 471, 89 S.Ct. at 1173.

### III.

■ Mack's claim that the court failed to insure that his plea was voluntary arises from the exchange directly after the judge asked him if he had any comments about the psychiatric report of the Medical Center staff. Mack contends that to comply with Rule 11, the court should have delved specifically into his statement that he was "being pressured into making the plea." It is clear from the record that at no time did the court undertake such an inquiry. Later during the proceedings when the court posed the standard series of questions about the circumstances surrounding the guilty plea, the judge did ask Mack, "Is your plea entirely free and voluntary?" and the appellant answered "Yes, it is." However, the court did not probe further or attempt to resolve the contradiction between that response and Mack's earlier statement that his plea was coerced.

On the record before us, we can only conclude that the court below violated an essential requirement of Rule 11–that the "court shall not accept a plea of guilty . . . without first . . . determining that the plea is voluntary and not the result of force or threats or promises apart from the plea agreement." Fed.R.Crim.P. 11(d). Once Mack stated that the plea was not made of his own free will, the court was required to undertake a more searching inquiry. *See United States v. Dayton*, 604 F.2d 931, 938 (5th Cir. 1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Rule 11 is designed to assist the district judge in

---

1. In *Timmreck* the trial judge, upon accepting the guilty plea of the defendant, explained to him that he could receive a 15–year prison sentence and a $25,000 fine, but failed to mention a mandatory special parole term of at least three years required by the applicable statute. The defendant was sentenced to 10 years' imprisonment plus a five year special parole term, and fined $5,000. The Supreme Court stated that the only claim was of a technical violation and noted that the defendant did not suffer prejudice "inasmuch as he had received a sentence within the maximum described to him at the time the guilty plea was accepted." *United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

making "the constitutionally required determination that a defendant's guilty plea is truly voluntary," *McCarthy v. United States*, 394 U.S. at 465, 89 S.Ct. at 1170, and "is intended to produce a complete record at the time the plea is entered." *Id.* Insuring that the plea is *truly* voluntary means that the court must resolve all doubts and questions arising about the guilty plea. The district court below did not do so.

Rule 11 was not satisfied merely because the court, in the course of going through a standard litany of questions, asked "Is your plea entirely free and voluntary?" and Mack responded affirmatively. In view of Mack's earlier statement that he was pressured into making a plea, his subsequent answer should have triggered a deeper probe for the purpose of reconciling the clearly contradictory comments.

Mack next claims that the district court violated Rule 11(c)(1) because it did not inform him of the nature of the charge to which he pleaded, nor determine that he understood the nature of the charge. Count IV, in part, contains the allegation that Mack violated 18 U.S.C. § 875(b) which makes it a crime to promote extortion in interstate commerce through "any threat to kidnap any person or any threat to injure the person of another." Count IV makes reference to 18 U.S.C. § 875(b), but does not quote from or explain it. If the defendant Mack was to make sense of the charges in Count IV, he would have had to have read the relevant statutory provision or have someone read or explain the provision to him. Mack claims on appeal that he never threatened physical injury and never intended to do so, and that he would not have plead guilty to Count IV if he understood the meaning of 18 U.S.C. § 875(b).

■ A guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. at 466, 89 S.Ct. at 1170. No "simple or mechanical rule," *United States v. Dayton*, 604 F.2d at 939, can be applied to satisfy Rule 11(c)'s requirement that the court personally inform the defendant of the nature of the charge and determine that he understands it. As the Advisory Committee on the 1974 amendments to Rule 11 noted:

> The method by which the defendant's understanding of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant. In some cases a judge may do this by reading the indictment and by explaining the elements of the offense to the defendants.

Fed.R.Crim.P. 11, Advisory Committee Notes on 1974 Amendments, 18 U.S.C.A. (West 1975). Courts which have sought to implement Rule 11 agree that reading an indictment will usually not suffice. *See, e. g., United States v. Dayton*, 604 F.2d at 936; *United States v. Boatright*, 588 F.2d 471 (5th Cir. 1979); *United States v. Wetterlin*, 583 F.2d 346, 350 n.6 (7th Cir. 1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). "In most cases, only the most sophisticated defendant would be informed . . . by a reading of the indictment without more." *United States v. Adams*, 566 F.2d 962 (5th Cir. 1978). The court should, at the very least, invite defendants to ask questions about the indictment, *see United States v. Dayton*, 604 F.2d at 938. Charges of a complex nature, including esoteric terms unfamiliar to the lay mind, may require greater explication by the bench. *Id.; United States v. Coronado*, 554 F.2d 166, 173 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

■ In the case at issue, the district court read the indictment to the defendant. The mere reading of the indictment without more would not have been sufficient to inform the defendant of the charge.[2] The court, however, had the government outline the evidence which it would have offered as to Count IV if the case had gone to trial. The Assistant United States Attorney stated that the government would have offered

**2.** We realize that there are indictments as to which a simple reading is the only explanation necessary.

evidence with respect to Count IV showing that S. Prestley Blake received a phone call in which an individual stated that "he would injure Mr. Blake's son or he would expose to the public an extra-marital sexual affair Mr. Blake was allegedly having if a sum of money, $5,000, was not sent to a Johnnie May Woodley ...." This court has held that a judge can rely on a prosecutor to state in open court the relevant statutory provision or to conduct part of the inquiry, *see United States v. Tursi*, 576 F.2d 396, 399 (1st Cir. 1978); *United States v. Yazbeck*, 524 F.2d 641, 643 (1st Cir. 1975). Based on the record, we find that the district court informed Mack as to the nature of the charges against him in compliance with Rule 11(c)(1).

█ Although the district court informed Mack of the charges, it did not determine that the defendant understood the nature of the charges. Simply informing a defendant of the charges does not "establish on the record that the court personally determined that the defendant *understood* the charges." *United States v. Wetterlin*, 583 F.2d at 350 n.6. Furthermore, "[r]outine questioning or a single response by the defendant that he understands [the nature] of the charge is insufficient," *Woodward v. United States*, 426 F.2d 959, 962 (3d Cir. 1970). The court should "engage in extensive an interchange as necessary to assure itself and any subsequent reader of the transcript that the defendant does indeed fully understand the charges." *United States v. Coronado*, 554 F.2d at 173. As the Fifth Circuit stated:

> Some defendants are more sophisticated than others. See *United States v. Saft*, 2 Cir. 1977, 558 F.2d 1073, 1079. Some charges are more difficult to understand than others. *United States v. Coronado*, 554 F.2d at 172. But "no matter how simple the charges, a district court should make the minor investment of time and effort necessary to set forth their meaning and demonstrate on the record that the defendant understands." *Id.*

*United States v. Adams*, 566 F.2d at 967–68.

█ In the case before us, the district court did not ask the defendant whether he had any questions about the charge or if he understood its meaning. In fact, the court discouraged questions about Count IV rather than engage in the dialogue necessary to a judicial determination of whether the defendant understood the charges. The court restricted the defendant's answers to "yes or no." A court cannot rely on a "routine boilerplate question to the defendant designed to elicit an acknowledgment of understanding." *United States v. Coronado*, 554 F.2d at 173.

The district court evidently depended on the private reading of the indictment by defendant and his counsel and accepted defense counsel's statement that he was satisfied that his client fully appreciated the meaning of the plea. The "[d]etermination that defendant has gone over the indictment with his attorney is not the determination that Rule 11(c) requires." *United States v. Adams*, 566 F.2d at 962. The court cannot abdicate to the defendant and his attorney responsibility for determining that the defendant understands the nature of the charges, *see Horsley v. United States*, 583 F.2d 670, 672 (3d Cir. 1978), but must enter into a dialogue with the defendant to ascertain that he in fact understands the nature of the charges.

## IV.

Mack's final claim is that the district court erred, in violation of 28 U.S.C. § 2255, when it denied his motion to vacate sentence without ordering the United States Attorney to answer. He contends that the court should at least have held an evidentiary hearing to resolve the issues raised in the motion and the plea transcript.

█ Section 2255 requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4(b) of the Rules Governing § 2255 Proceedings. While the defendant bears the burden of establishing by a preponderance of the evidence that he is entitled to

relief and to an evidentiary hearing, *United States v. DiCarlo*, 575 F.2d at 954, the court "must take the defendant's allegations as 'true except to the extent that they are contradicted by the record or are inherently incredible, and to the extent that they are merely conclusions rather than statements of fact.'" *Otero v. United States*, 494 F.2d 900, 902 (1st Cir. 1974); *Domenecia v. United States*, 292 F.2d 483, 484 (1st Cir. 1961). The "district court may deny a hearing so long as it does so on the basis of the facts as alleged by the defendant and so long as it would be within the court's discretion to do so were the facts alleged by the defendant true." *United States v. Fournier*, 594 F.2d 276, 279 (1st Cir. 1979). A hearing is not necessary "when a § 2255 motion (1) is inadequate on its face, or although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974).

 In dismissing Mack's motion, the district court stated that the defendant's "rights were carefully enumerated during the change of plea. Accordingly, the court finds this case frivolous and dismisses same." We have found to the contrary. Moreover, the court erred in denying a hearing because it did not accept the defendant's allegations as true, and then reject a hearing on the basis of those facts; rather, it appears to have dismissed the motion because it believed the facts untrue as alleged. This the district court cannot do.

## V.

In conclusion, we must note that the record shows that the district court and the defendant's counsel both believed that the plea agreement was very favorable to the defendant. This was not Mack's first brush with the law; he had a record of previous convictions. If convicted on all four counts at trial, Mack could have been sentenced to a prison term of twenty nine years. An apparently favorable plea bargain, however, cannot override the requirements of Rule 11. Fidelity to Rule 11 not only protects the accused, but also helps "reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate." *McCarthy v. United States*, 394 U.S. at 472, 89 S.Ct. at 1173.

A defendant whose plea has been accepted in violation of Rule 11 is given the opportunity to plead anew. *McCarthy v. United States*, 394 U.S. at 472, 89 S.Ct. at 1173. We reverse the decision of the district court below and remand for a hearing at which the defendant Mack is to be afforded an opportunity to plead anew.

*Reversed and remanded.*