# United States Court of Appeals
## For the First Circuit

---

No. 99-1079

UNITED STATES,

Appellee,

v.

FELIX CORPORAN-CUEVAS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

---

Before

Torruella, Chief Judge,

Campbell, Senior Circuit Judge,

and Selya, Circuit Judge.

---

Bruce J. McGiverin for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom
Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Chief, Criminal Division, Assistant United States Attorney, were on brief for appellee.

April 3, 2001

**CAMPBELL, <u>Senior Circuit Judge</u>.**     Defendant Félix Corporán-Cuevas ("Corporán") was convicted upon a plea of guilty of the following two offenses: (count I) conspiring, under 18 U.S.C. § 371, to violate the federal Hostage Taking statute, 18 U.S.C. § 1203, and (count II) aiding and abetting, under 18 U.S.C. § 2, the violation of the federal Hostage Taking statute, 18 U.S.C. § 1203.  On appeal he raises four issues which we consider seriatim, after a brief recitation of the relevant facts.

On April 18, 1996, in the District of Puerto Rico, defendant's alleged co-conspirator Félix Beras and an unidentified individual abducted thirteen-year old Carlos de la Rosa Berbera who was traveling in a car with his grandmother, Carmen Villar-Cordero.  At gun-point, the two kidnapers ordered Mrs. Villar-Cordero out of the car and drove off with her grandson.  Two hours later, Mrs. Villar-Cordero received a ransom call, ordering that she produce the child's parents or money in exchange for her grandson's freedom.  By then, it appears that, in addition to Félix Beras, defendant Corporán and two other co-defendants were holding young Carlos.  The FBI succeeded in rescuing the child four days later in Rio Piedras.  Both Corporán and Beras were on the scene and were arrested.

On the day scheduled for trial -- October 28, 1996 -- Corporán entered and the court accepted a change of plea of guilty as to Counts I and II.  On February 12, 1997, the district court sentenced Corporán to a term of 200 months imprisonment on Counts I and II.  The court also imposed two terms of supervised release: three years on Count I and five years on Count II, to be served concurrently.  Corporán filed a timely notice of appeal on February 21, 1997.

I.        Elements of the Federal Crime of Hostage Taking

Defendant argues that the indictment fails to allege one of the essential elements of the crime of hostage taking -- the so-called international element, see 18 U.S.C. § 1203(b)(2), infra -- rendering it fundamentally defective and requiring us to reverse his conviction notwithstanding his guilty plea.

Section 1203 of 18 U.S.C., the federal statute criminalizing hostage taking, states, in relevant part,

> (a)  Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

-4-

.....

> (b)(2) It is not an offense under this section if the conduct required for the offense occurred inside the United States, each alleged offender and each person seized or detained are nationals of the United States, and each alleged offender is found in the United States, unless the governmental organization sought to be compelled is the Government of the United States.

18 U.S.C. § 1203. Defendant points out that the indictment fails to allege that he or any other person involved in the kidnaping of Carlos de la Rosa Berbera were not nationals of the United States (the so-called "international element," see 18 U.S.C. § 1203(b)(2)). Defendant argues that the fact that an alleged offender or victim of the hostage taking is a non-U.S. national is an essential jurisdictional element of the offense, and, as such, had to be alleged in the indictment in order to comport with due process. See United States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000) (citing Hamling v. United States, 418 U.S. 87, 117-18 (1974) and United States v. Hess, 124 U.S. 483, 487 (1888)). See also United States v. Penagaricano-Soler, 911 F.2d 833, 839-40 (1st Cir. 1990) (citing cases).

The government does not dispute that the indictment fails to allege facts showing compliance with the international aspect of the hostage taking statute, but contends that this aspect need not be pleaded as it is an affirmative defense only.

-5-

According to the government, the defendant has the burden to allege and prove that his case falls within the statutory exception as defined by 18 U.S.C. § 1203(b)(2) – that all offenders and victims of the crime were United States nationals.

On different facts, the absence of an allegation in the indictment that at least one alleged offender or victim was a non-U.S. national might be cause for concern. Compare United States v. Vuitch, 402 U.S. 62, 70 (1971) (stating as a "general guide to the interpretation of criminal statutes that when an exception is incorporated in the enacting clause of a criminal statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception") with United States v. Santos-Riviera, 183 F.3d 367, 370 (5th Cir. 1999) (holding that the exception incorporated into the enacting clause of the Hostage Taking statute is not an essential element of the offense for which the government bears the burden of proof). Given Vuitch, it is arguable that the Fifth Circuit's reasoning in Santos-Riviera was incorrect.

But we need not and do not decide that issue at this time. The uncontraverted facts of record leave no doubt that even if the so-called international element should have been pleaded in the indictment, any error resulting from that

omission was harmless.  See Mojica-Baez, 229 F.3d at 311 (holding that failure of indictment to allege an element of the offense is subject to harmless error review where the indictment otherwise provided the defendants with fair notice of the charges against them).  Corporán freely admitted to the court that he was a national of the Dominican Republic both at his change of plea hearing and again at sentencing.  That he is not a United States national is undisputed.  The international element of the statute -- even assuming arguendo that it should have been pleaded in the indictment -- has been plainly satisfied, despite the government's failure to plead it expressly.  Nothing in the record suggests that Corporán could in any way have been prejudiced by the indictment's failure to have alleged his Dominican citizenship.  Accordingly, this claim of error furnishes no basis for reversal.  See id.

II.     Rule 11 Colloquy

Defendant's second issue on appeal concerns the validity of his guilty plea.  Corporán contends that his Rule 11 colloquy before the district court was fatally flawed in two respects:  (1) the district court failed to provide a meaningful explanation of the charges to which Corporán was pleading guilty, and (2) the district court failed to advise Corporán, pursuant to Federal Rule of Criminal Procedure 11(c)(5), that as

-7-

a consequence of his oath, he could be subject to a charge of perjury in the event of any false answers. Defendant failed to raise these issues below[1], hence, our review is governed by the plain error standard. See United States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000) ("Where the error was not called to the district court's attention, appellate review is governed by the plain error standard, which requires not only an error affecting substantial rights but also a finding by the reviewing court that the error has seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.") (alteration in original). Having reviewed the record, we do not find plain error.

Corporán's first attack on his plea engages one of Rule 11's core concerns -- whether the defendant understood the nature of the charges against him. See, e.g., United States v. Gandia-Maysonet, 227 F.3d 1, 3 (1st Cir. 2000) ("[A] core concern of Rule 11 . . . includes ensuring that the defendant understands the elements of the charges that the prosecution

---

[1] We note that post-sentencing, on February 21, 1997, defendant did file a pro se Motion to Set Aside Sentence, Reduce Sentence or in the Alternative to Allow Defendant to Withdraw His Plea. The substance of that motion concerned the alleged misunderstandings between Corporán, his counsel and the United States Attorney regarding the recommended sentencing guideline range for the crimes charged. That motion did not direct the district court's attention to the alleged infirmities in the Rule 11 colloquy that Corporán addresses in this appeal.

would have to prove at trial.")(quotation marks and citations omitted).  Here, we find nothing in the record of the Rule 11 colloquy to indicate that the district court's description of the offenses charged was  inadequate to provide the defendant with an understanding of the elements material to his case.

It is true, as defendant contends, that the district court failed to recite 18 U.S.C. § 1203(b)(2)'s international aspect, i.e., that to be convicted under 18 U.S.C. § 1203 an offender or a victim must be a non-United States national.  But as already pointed out, supra Part I, the existence of the international element was established by Corporán's voluntary admission in open court.  There was no way for Corporán to have altered his citizenship however much he learned about this aspect of the charges against him.  The court's failure to recite the international aspect did not constitute plain error.

Next, Corporán argues that the district court's bald reading of the indictment, without providing any supplemental explanation or the meaning of key terms, such as "conspiracy," "aiding and abetting," or "willfully and intentionally," was insufficient to apprise him of the charges of hostage taking. In some cases, however, simply reading an indictment may satisfy Rule 11's requirement.  See Fed. R. Crim. P. 11 advisory committee notes to 1974 Amendments ("The method by which the

defendant's understanding of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant. In some cases, a judge may do this by reading the indictment. . . .").  This is such a case.  Although, "[c]harges of a complex nature, including esoteric terms unfamiliar to the lay mind, may require greater explication by the bench," United States v. Mack, 635 F.2d 20, 25 (1st Cir. 1980), here, the charges against Corporán were not complicated.  See United States v. Allard, 926 F.2d 1237, 1245 (1st Cir. 1991).  See also Mack, 635 F.2d at 25 & n. 2 (1st Cir. 1980).  The terms to which the defendant points -- such as "conspiracy" and "aiding and abetting" -- although terms of art, were not hard to understand in the context used. This is not a case like United States v. Gandia-Maysonet in which the judge and the government throughout the Rule 11 colloquy affirmatively misstated the newly amended mens rea element of the crime.  See Gandia-Maysonet, 227 F.3d at 4-5 (where the Rule 11 colloquy failed to put the defendant on notice that to be convicted under 18 U.S.C. § 2119, as amended only six months previously, the government had to prove the aggravated intent of causing death or serious bodily harm). That the court did not embellish the indictment's recitation of

the offenses charged does not, in these circumstances, support Corporán's claim of a Rule 11 error.

We further note that the government thoroughly recited the facts underlying its case against Corporán – facts to which Corporán acceded and which, if proved, would support a conviction under 18 U.S.C. § 1203. These factual recitations helped explicate the district court's reading of the charges by fleshing out the nature of the conduct to which Corporán was pleading guilty. See Mack, 635 F.2d at 25. Cf. Allard, 926 F.2d at 1245 (determining that the prosecutor's recitation and defendant's admission of the facts underlying the charge insufficient to educate the defendant of the offense of defrauding a hospital because the fraudulent scheme described by the government concerned mailing false licenses to the Board of Registration in Medicine and not to a hospital).

The district court found defendant to be alert and intelligent, a factor further confirming defendant's understanding of the charges. We find no error, let alone plain error that affected the fairness, integrity, or public reputation of the judicial process. See United States v. Perez-Carrera, No. 98-1788, slip. op. at 4 & n. 2 (1st Cir. 2001); Savinon-Acosta, 232 F.3d at 268. We hold that the Rule 11

colloquy fairly put defendant on notice of the substance of the crimes for which he was charged.

Corporán's second attack on his plea points us to the district court's failure to inform the defendant that, as a consequence of his oath, he could be subject to a charge of perjury in the event of any false answers. <u>See</u> Fed. R. Crim. P. 11(c)(5). Although it seems true from the record that Corporán was not so advised by the district court, we have held that a technical failure such as this one, standing alone, may be harmless error. <u>Gandia-Maysonet</u>, 227 F.3d at 3 ("Failures to comply with very specific, yet technical, requirements of Rule 11 are often found 'harmless,' Fed. R. Crim. P. 11(h)."); <u>United States</u> v. <u>Allard</u>, 926 F.2d at 1244 ("Mere technical violations of [Rule 11's] procedural requirements do not warrant setting aside a plea."). Here the question is not just whether the error was harmless, but whether plain error was committed. As no perjury charges are pending against Corporán (and he has not been threatened with any), and the Rule 11 colloquy was otherwise adequate, the district court's omission rather obviously does not amount to plain error.

III.    <u>Adherence to Rule 32</u>

Corporán's third issue on appeal alleges various violations of Federal Rule of Criminal Procedure 32, all of

which concern the timeliness with which the defendant was provided with a copy of the presentence report (PSR) and the government's objections thereto. In general, Corporán states that he did not have a sufficient opportunity to review his PSR and thus he requests a remand for re-sentencing.

The record shows that the defendant's counsel was not served with a copy of the PSR until January 27, 1997 -- less than a week before the February 3rd date that was scheduled for sentencing -- and that he did not receive the government's objections until the morning of February 3rd. Rule 32 provides that, unless waived, the defendant has the right to a copy of the PSR no less than thirty-five days prior to sentencing and to the government's objections to the PSR no less than twenty-one days prior to sentencing. See Fed. R. Crim. P. 32(b)(6)(A) and (B). Corporán objected to the sentencing going forward on February 3rd, and the district court appropriately granted him a continuance until February 7, 1997, the date by which Corporán's counsel said he would be ready. Defense counsel told the court that he needed some time to discuss the PSR with his client and to go over what he remembered to be some agreements with the government that were made back in October, 1996, at the time of the guilty plea. He went on to state that he would be

filing objections to the PSR and that he would be ready for sentencing on February 7, 1997.

The sentencing did not in fact take place until February 12, the February 7th date having been rescheduled after defense counsel had sprained his ankle. On February 12, instead of filing objections to the PSR as he said he would, defendant told the court that he "basically agree[d] with all" of the objections filed by the government and argued only that, as a first offender, defendant should be sentenced at the lower end of the agreed-to guideline range of 188 months to 235 months in prison. Defendant now asserts that if more time had been provided he would have filed objections to the PSR. He relies on the pro se motion he later filed on February 21, 1997 as support for his allegation that he would have disputed the sentence imposed had he had more time to do so.

We find no merit in Corporán's argument on appeal for resentencing based upon alleged Rule 32 error. First, by proposing and accepting the February 7th sentencing date, Corporán waived the lengthier time period provided in Fed. R. Crim. P. 32(b)(6)(A) and (B). The rule expressly recognizes that a defendant may waive these longer periods. See id. Second, at the February 3rd hearing, the district court informed the defendant on the record that unless the government prevailed

-14-

on its objections, the sentencing guideline range would be 188 to 235 months. To this, the defense counsel assured the court that he had "explained to [his client] all the potential ranges depending on the outcome of these objections." Defendant had notice of the sentencing range and cannot be heard now to claim surprise. Third, on February 12, defense counsel informed the court that "we basically agree with all of [the government's objections]." Defense counsel's assurances to the district court on both occasions conforms with the case law in this circuit that requires the district court to ascertain from the defendant and his counsel that they have had an opportunity to read and discuss the PSR. See, e.g., United States v. Manrique, 959 F.2d 1155, 1157 (1st Cir. 1992) (determining that defense counsel's statement -- "with regard to the Presentence Report and the government's version therein the defendant virtually has adopted the government's version" -- sufficient to establish that counsel had read the PSR and discussed its contents with the defendant). Fourth, at the February 12th sentencing hearing, after defense counsel explained defendant's position that the appropriate sentence for a first offender is at the lower end of the guideline range, the defendant himself, when asked, told the judge that he had nothing else to add. For all of these reasons, the defendant cannot now be heard to object

-15-

that he was unfairly surprised by the sentence imposed and that the basis of the sentence is without proper foundation.  Given defendant's waiver, defense counsel's assurances and defendant's silences during the two hearings on sentencing, we can ascertain no plain error in the district court's administration of Rule 32.

IV.        Sentencing Error

Defendant argues, and the government agrees, that the district judge erred in imposing a concurrent 200 month sentence for a conviction on Count I, which charged defendant with conspiracy in violation of 18 U.S.C. § 371, an offense that provides for imprisonment of "not more than five years."  The judgment in this case imposed a 200 month sentence on both counts without specifically tying that sentence to either count. However, the docket sheet understandably describes the disposition for Count I, Conspiracy to Defraud under 18 U.S.C. § 371, as being imprisonment for a term of 200 months.  The same sentence is said to have been imposed for Count II, aiding and abetting a violation of the Hostage Taking statute, 18 U.S.C. §§ 1203 and 2.  Thus, the court records indicate the imposition of concurrent sentences of 200 months each for Counts I and II, despite the fact that Count I, charging conspiracy under 18

U.S.C. § 371, carries a maximum penalty of only five years.[2] Corporán was properly advised at the plea colloquy that the maximum penalty under Count I was five years. It was plain error, therefore, to sentence Corporán under Count I to 200 months, a term of imprisonment 120 months beyond 18 U.S.C. § 371's statutory maximum. See United States v. Perez-Carrera, No. 98-1788, slip. op. at 5-6 (1st Cir. 2001). As noted, the government concedes that the sentence under Count I cannot stand. We therefore remand Count I to the district court with instructions to modify the sentence imposed under Count I so as not to exceed imprisonment for more than five years. See Fed. R. Crim. P. 35(a). In all other respects, the conviction and sentence are affirmed.

So ordered.

---

[2] Defendant was not charged with conspiracy under 18 U.S.C. § 1203, the hostage taking statute itself, which includes within its proscription the conspiracy to commit the act of hostage taking and which is punishable by life in prison. See 18 U.S.C. § 1203.