**Morgan v. NH State Prison**          01-468-B          01/24/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**James Morgan**

   **v.**                          Civil No. 01-468-B
                              Opinion No. 2003 DNH 019
**Jane Coplan, Warden**
**New Hampshire State Prison**


**MEMORANDUM AND ORDER**


James Morgan pled guilty to the crime of felonious sexual assault, N.H. Rev. Stat. Ann. 632-A:3 (1996 & Supp. 2002). He was sentenced to a minimum of 3 ½ years and a maximum of life in prison. The sentencing court suspended all but 7 years of his maximum sentence upon the conditions that Morgan remain of "good behavior," have no unsupervised contact with minor males and have no contact with the victims of his offense. After Morgan had served his minimum sentence, been released on parole and had his parole revoked, the court reinstated an additional 13 years of his suspended life sentence because it determined that he had violated the conditions under which the sentence had been

suspended.  Morgan is currently serving a maximum sentence of life in prison with all but 20 years suspended.

Morgan has filed a habeas corpus petition challenging the sentencing court's decision to reinstate a portion of his suspended life sentence.  He first argues that the court improperly used prior convictions to enhance his original sentence beyond the default statutory maximum in violation of Apprendi v. New Jersey, 530 U.S. 466, 476 (2000).  He alternatively argues that the court could not lawfully reinstate the suspended portion of the life sentence because: (1) his original sentence did not give him adequate notice of the conduct that could lead to reinstatement; (2) the reinstatement was  an unconstitutionally excessive punishment because it was based on noncriminal conduct; (3) the reinstatement was not supported by sufficient evidence; and (4) he did not receive effective assistance of counsel at the hearing which led to the reinstatement.

The matter is before me on cross-motions for summary judgment.  (Doc. Nos. 32, 33, and 36).

## I.  BACKGROUND

Morgan was released on parole on January 25, 2000.  At the time, he agreed to abide by a number of parole conditions including the following:

> 7. I will remain in good conduct, obey all laws, and remain arrest-free.
> 13C.  I will participate in and satisfactorily complete...Summit House Aftercare Program; Sex offender counseling; Depo-provera therapy.
> 13E. I will not have unsupervised company of (female/male) minors at any time.

Id., App. D.

Just over four months later, on May 30, 2000, the Adult Parole Board issued two warrants for Morgan's arrest.  The Board claimed that Morgan had violated:  (1) condition 7 by refusing to leave a friend's home and causing her to be fearful; (2) condition 13C by failing to meaningfully participate in sex offender counseling; and (3) condition 13E by having unsupervised contact with two minor children.  Resp't Objection to Pet'r Mot. for Summ. J., App. E.  Morgan eventually pled guilty to failing to meaningfully participate in sex offender counseling and having unsupervised visits with minors.  At the same time, the parole board found him not guilty of violating condition 7 by not

-3-

leaving his friend's home. The parole board then revoked Morgan's parole and recommitted him to state prison.

After the Parole Board revoked Morgan's parole, Lance R. Messenger, the Director of New Hampshire State Prison Sexual Offender Program, wrote a letter to Kenneth Anderson, the Grafton County Attorney, recommending "bringing this matter before the court to allow the judge to reconsider imposing the maximum sentence of LIFE to allow for lifetime parole." Id., App. G. Messenger's letter set out all of Morgan's prior offenses and stated "I believe James Morgan is a fixated pedophile and poses a very high risk to reoffend." Id.

On July 10, 2000, the Grafton County Attorney filed a motion to reimpose the suspended portion of Morgan's original sentence. Resp't Objection to Pet'r Mot. for Summ. J., App. I. The State argued that because Morgan "has failed to comply with parole, as well as this Court's specific order not to have unsupervised contact with minors," the Court should grant the State's motion to reimpose Morgan's life sentence. Id.

Morgan reached an agreement with the prosecutor concerning the motion to reimpose. Based on this agreement, at a hearing on

-4-

October 19, 2000, Grafton Superior Court Judge Peter Smith

modified Morgan's maximum sentence from suspension of "[a]ll but

7 year(s)" of the life sentence to "[a]ll but 20 year(s)." Id.,

App. K.  Before he modified Morgan's sentence, Judge Smith

questioned Morgan, Morgan's counsel, and the prosecutor as

follows:

> Court: Mr. Hutchins, have you reviewed this agreement with your client?
> Mr. Hutchins: I have, your Honor.
> Court: And do you believe that he understands the agreement?
> Mr. Hutchins: I believe he does.  I compared the agreement with the original sentencing orders of this Court and explained exactly how that original sentence would be modified or amended.
> Court: Okay. Mr Morgan, what is your understanding of the agreement that was arrived at between you and the State?
> Morgan: That a plea bargain deal would be three and a half to 20, sir, with the life sentence still suspended.
> Court: All right. What does that mean about you going back to prison?
> Morgan: What that means, sir, to me, is that I violated my parole violation, sir. I violated the law.
> Court: Well, I wasn't asking you that.  It means how much longer does the State have control over you?
> Morgan: Twenty years, sir.
> Court: From when?
> Morgan: From the day I was sentenced, when I was originally sentenced.
> The Court:...You understand, Mr. Morgan, that the State can now opt to keep you in jail for 16 years?
> Morgan: Yes, your honor, I do.

Resp't Objection to Pet'r Mot. for Summ. J., App. L.  The

prosecutor then added that if Morgan were to reoffend during that

time "we still have the life sentence hanging over his head, and we could still move to impose that in the event he reoffends." Id. Judge Smith then asked Morgan if he understood that, to which Morgan responded affirmatively. Id.

## II.  ANALYSIS

I address each of Morgan's claims, in turn, beginning with his challenge to his original sentence.

### A.  The Original Sentence

Morgan claims that his original sentence violated his right to due process because the sentencing court improperly used prior convictions to give him a sentence that exceeded the statutory maximum sentence that he would otherwise have faced based on his felonious sexual assault conviction.[1]  Morgan bases his argument

---

[1]  The felonious sexual assault statute, N.H. Rev. Stat. Ann. 673-A:3, makes the crime a class B felony.  Class B felonies carry a maximum prison sentence of 7 years.  See N.H. Rev. Stat. Ann. 651:2 II(b) (1996 & Supp. 2002).  The maximum sentence for felonious sexual assault is increased to life in prison, however, if the defendant has two prior convictions for felonious sexual assault or aggravated felonious sexual assault.  See N.H. Rev. Stat. Ann. 651:6 II(d) (1996 & Supp. 2002).  Morgan was subject to a maximum life sentence under these provisions because he had two prior felonious sexual assault convictions from the state of Vermont.

on <u>Apprendi</u>, which held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 976. The short answer to Morgan's argument is that, as the above-cited quote reveals, <u>Apprendi</u> simply does not apply to enhancements based upon prior convictions.[2] <u>See</u> <u>United States v. Moore</u>, 286 F.3d 47, 50 (1st Cir. 2002)("we have ruled with regularity bordering on the monotonous that . . . the rationale of <u>Apprendi</u> does not apply to sentence enhancement provisions based upon prior criminal convictions").

## B. "Adequate Notice"

Morgan alleges that the reinstatement of a portion of his suspended sentence violates his right to due process because he did not receive adequate notice that his behavior could result in the reinstatement of his suspended sentence. I reject this argument.

---

[2] Morgan's contention that his original sentence qualifies as cruel and unusual punishment in violation of the Eighth Amendment fares no better. No Supreme Court case has held that it is cruel and unusual punishment to sentence a three-time sex offender to life imprisonment.

Morgan's life sentence was partially suspended on the condition that he have "no unsupervised contact with minor males." This condition is clear and unambiguous. As Morgan later admitted both at his parole revocation hearing and at the hearing on the state's motion to reimpose, he violated this condition by having unsupervised contact with a three-year- old boy on multiple occasions. He thus has no basis to complain that he received inadequate notice of the kind of conduct that could lead to the reinstatement of his life sentence.[3]

## C. **Proportionality**

Morgan claims that the partial reinstatement of his suspended life sentence is a disproportionate punishment that violates the Eighth Amendment. Because the state court did not address this argument, I review it *de novo*. Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001). Under Harmelin v. Michigan, 501 U.S. 957, 1005 (1991), an individual seeking proportionality review is required to demonstrate, an "initial inference of gross

---

[3] Morgan's argument based on the alleged vagueness of the court's "good behavior" condition, see, e.g., State v. Budgett, 146 N.H. 135 (2001), is simply irrelevant because Morgan's life sentence was not partially reinstated because he violated this condition.

-8-

disproportionality" between the "gravity of the criminal conduct and the severity of the . . . penalty imposed." <u>United States v. Frisby</u>, 258 F.3d 46, 5 (1st Cir. 2001) (quoting <u>Tart v. Massachusetts</u>, 949 F.2d 490, 503 n. 16 (1st Cir. 1991)); <u>see also United States v. Cardoza</u>, 129 F.3d 6, 18 (1st Cir. 1997).

Morgan incorrectly bases his proportionality argument on the premise that his current sentence was imposed solely because he violated the conditions under which his life sentence was susupended. This is simply incorrect. Instead, his sentence is the result of his conviction for felonious sexual assault. Because Morgan could have been sentenced to life in prison based on this conviction, it does not violate the Eighth Amendment for the court to partially reinstate a portion of the suspended life sentence based on Morgan's admitted violations of the conditions under which the sentence was suspended.

D.   **Sufficiency of Evidence**

Morgan argues that the partial reinstatement of his suspended sentence violates his right to due process because it was based on  insufficient evidence. The state court did not address this issue and I therefore review Morgan's claim de novo.

<u>Fortini</u>, 257 F.3d at 47.  The Supreme Court has held in <u>Tollett</u>

<u>v. Henderson</u>, 411 U.S. 258 (1973), that a

> guilty plea represents a break in the chain of events
> which has preceded it in the criminal process.  When a
> criminal  defendant admitted in open court that he in
> fact guilty of the offense...he may not thereafter
> raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry
> of the guilty plea.  He may only attack the voluntary
> and intelligent character of his guilty plea by showing
> that the advice he received from counsel was not within
> the standards set forth [by the Supreme Court].

<u>Id.</u> at 267; <u>see</u> <u>United States v. Valdez-Santana</u>, 279 F.3d 143,

145 (1st Cir. 2002) (guilty plea prevented defendant from a later

Fourth Amendment challenge); <u>United States v. Martinez-Martinez</u>,

69 F.3d 1215, 1224 (1st Cir. 1995) (a guilty plea waives all

challenges to the actual and legal foundations of the charges);

<u>United States v. Cordero</u>, 42 F.3d 697, 698-99 (1st Cir. 1994)

(guilty plea acts as a waiver of all non-jurisdictional errors).

A guilty plea renders "irrelevant those constitutional violations

not logically inconsistent with the valid establishment of

factual guilt." <u>Menna v. New York</u>, 423 U.S. 61, 62-63 n. 2,

(1975); <u>see</u> <u>Tollett</u>, 411 U.S. at 267.

Morgan admitted at the hearing on the state's motion to

reimpose that he had violated the conditions under which his

sentence was suspended.  Any attack on the sufficiency of the evidence thus is foreclosed under <u>Tollett</u> and its progeny. Moreover, even if Morgan's argument were not barred by <u>Tollett</u>, his admission at both the parole revocation hearing and the hearing on the motion to reimpose that he had had unsupervised contact with a minor male provides ample support for the state's charge that he had violated the conditions under which his life sentence was suspended.

## E.    Ineffective Assistance of Counsel

Morgan claims that the state violated his due process rights because he was denied effective assistance of counsel.[4]  Because the state court did not address this issue in response to Morgan's first motion for a writ of habeas corpus, I review his claim de novo.  <u>Fortini</u>, 257 F.3d at 47.

To maintain a successful ineffective assistance of counsel claim, Morgan must demonstrate that: (1) his attorney's representation fell below an objective standard of reasonableness

---

[4]  I assume for purposes of analysis that Morgan had a right to counsel at the hearing to reimpose suspended sentence.  <u>Cf.</u> <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 790-791 (1973) (case-by-case analysis is required to determine whether a parolee is entitled to counsel at a parole revocation hearing).

and (2) but for counsel's deficiencies, the result of the proceeding would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).  Morgan does not fulfill these requirements because he has failed to explain how his attorney's representation fell below the standard of reasonableness.  Morgan faults his attorney for not calling his friend, Sandra Begin, as a witness.  However, given Morgan's decision to plead guilty and accept a partial reinstatement of his suspended sentence, no purpose would have been served by calling Ms. Begin.  Moreover, even if Morgan had decided to contest the Motion to Reimpose, Ms. Begin's testimony would have hurt rather than helped Morgan because she would have testified that Morgan had unsupervised contact with her minor son.  The possibility, as Morgan claims, that she also may have testified that she was not afraid of Morgan would have been irrelevant because the prosecutor was not seeking to reinstate Morgan's life sentence because he had threatened Ms. Begin.  Accordingly, Morgan has failed to demonstrate that he was denied the effective assistance of counsel.

## IV.  CONCLUSION

For the reasons set forth herein, the state court's decision to partially reinstate Morgan's suspended sentence was not "contrary to" or an "unreasonable application" of Supreme Court precedent.  See 28 U.S.C. § 2254(d)(2002); Williams v. Taylor, 529 U.S. 362, 412 (2000).  Therefore, I grant the Warden's motion for summary judgment (Doc. No. 36) and deny Morgan's motions for summary judgment (Doc. No. 32, 33).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

January 24, 2003

cc:  Elizabeth A. Dunn, Esq.
     Philip McLaughlin, Attorney General
     James Morgan, pro se